# United States Court of Appeals
## For the First Circuit

No. 25-1469

KENDELL SEAFOOD IMPORTS, INC.,

Plaintiff, Appellant,

v.

MARK FOODS, LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Montecalvo, Lipez, and Kayatta,
Circuit Judges.

John O. Mancini, with whom Mancini Carter, PC, was on brief, for appellant.

Joshua C. Krumholz, with whom Sadie Milka and Holland & Knight LLP were on brief, for appellee.

March 27, 2026

**MONTECALVO, <u>Circuit Judge</u>.** Plaintiff-Appellant Kendell Seafood Imports, Inc. ("Kendell"), appeals the district court's order granting a motion to dismiss filed by Defendant-Appellee Mark Foods, LLC ("Mark Foods"). For the reasons that follow, we affirm the district court's order.

## I.

In October 2024, Kendell filed its initial Complaint in the United States District Court for the District of Rhode Island alleging one count of "tortious interference" against Mark Foods. Kendell and Mark Foods both import fish, and Kendell contends that Mark Foods interfered with Kendell's agreement with a fish distributer, Chilean Sea Bass, Inc. ("CSB").

Mark Foods moved to dismiss the initial Complaint in November 2024. Then, in December 2024, Kendell filed an Amended Complaint ("AC"), again alleging one count of "tortious interference" against Mark Foods.[1] That same day, Kendell also filed an opposition to the motion to dismiss, arguing that the district court should not apply the motion to dismiss to the AC but also opposing the motion on substantive grounds. Mark Foods filed a reply soon after. Both Kendell's opposition to the motion

---

[1] As it pertains to the analysis here, the relevant facts in the AC were identical to those in the initial Complaint. Nearly all the factual allegations that Kendell added in the AC relate to whether a valid agreement existed between Kendell and CSB, but the district court did not reach this element of tortious interference, nor do we.

to dismiss and Mark Foods' reply to the opposition cited to and treated the AC as the operative complaint.

Relying on the claims and allegations in the AC, the district court granted the motion to dismiss with prejudice for failure to state a claim, concluding that Kendell's tortious interference claim lacked facial plausibility because three of the claim's elements were not supported by adequate factual allegations. Kendell timely appealed.

## II.

Before us, Kendell first argues that the district court erred when it applied Mark Foods' pending motion to dismiss to Kendell's subsequently filed AC. Kendell contends that its filing of the AC superseded the initial Complaint and therefore mooted the motion to dismiss. Mark Foods responds that the district court did not err when it applied the motion to dismiss to the AC rather than requiring Mark Foods to file a new motion to dismiss.

We find that the district court did not err when it applied the motion to dismiss to the AC. The AC did not moot the already pending motion to dismiss because the AC did not add allegations that altered the relevant arguments made in the motion to dismiss. To have required Mark Foods to file a subsequent,

materially identical motion to dismiss would have elevated form over substance.

Next, we consider whether the district court erred in granting Mark Foods' motion to dismiss Kendell's tortious interference claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] We apply the substantive law of the state of Rhode Island to determine whether Kendell has stated a claim for tortious interference. See New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). Under Rhode Island law, "[t]o prevail on a claim of tortious interference with contractual relations, a plaintiff must show '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom.'" Tidewater Realty, LLC v. State, 942 A.2d 986, 993 (R.I. 2008) (quoting Smith Dev. Corp. v. Bilow Enters., Inc., 308 A.2d 477, 482 (R.I. 1973)). The Rhode Island

---

[2] This court reviews the district court's dismissal of a complaint for failure to state a claim de novo. García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013). We accept the complaint's well-pleaded facts as true and draw all reasonable inferences in the pleader's favor. Id. When assessing the plausibility of the complaint, this court uses a two-pronged approach, first "distinguish[ing] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)," and then determining whether the credited factual allegations "are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 103 (citation modified).

- 4 -

Supreme Court has clarified that "the elements of the tort require showing an 'intentional and improper' act of interference, not merely an intentional act of interference." Avilla v. Newport Grand Jai Alai LLC, 935 A.2d 91, 98 (R.I. 2007) (quoting Restatement (Second) of Torts § 766B cmt. d at 22 (A.L.I. 1979)).[3]

Kendell alleged the following relevant facts, primarily in paragraphs 23, 24, 25, and 27 of the AC. Between 2012 and 2020, Kendell purchased the fish distributor CSB's entire catch of Chilean sea bass. Kendell "continued to work with . . . CSB to purchase [its] entire catch for the 2021 year," and CSB "communicated to Kendell that it agreed" to resolve any outstanding balance Kendell owed from 2020 by including it in the price for 2021. Mark Foods attempted to solicit business from CSB between 2012 and 2020 by sending CSB requests to purchase and proposed purchase prices. Mark Foods solicited CSB's business even though "Mark Foods was fully aware of the [a]greement, [the] ongoing contractual relationship between Kendell and CSB[,] and Kendell's

---

[3] The AC contained only a single count of "tortious interference." The district court interpreted this as a claim for "tortious interference with contractual relations" and conducted its analysis on that basis. Although Kendell's briefing before the district court and this court at times refers to interference with both contractual relations and prospective business opportunity, under Rhode Island law, "the elements of intentional interference with prospective contractual relations 'are identical to those required to state a claim based on interference with contractual relations, except for the requirement in the latter that an actual contract exist.'" Avilla, 935 A.2d at 98 (quoting Mesolella v. City of Providence, 508 A.2d 661, 670 (R.I. 1986)).

legitimate business expectancy with CSB."  In sum, Kendell alleged that after the agreement was made "between Kendell and CSB to ameliorate the 2020 losses," Mark Foods "intentionally and improperly interfered" with this agreement, which it did "knowingly and with the intent to interfere," and that Kendell had been "damaged" by Mark Foods' intentional interference.

The district court held that the AC lacked three of the elements of tortious interference: knowledge, intentional interference, and damages.  Holding that some of the allegations were "simply legal conclusions," the district court determined that the only factual allegation in the AC that bore on these three elements was "that from 2012 to 2020, Mark Foods tried to procure CSB's annual catch by sending CSB's authorized agent 'proposed purchase prices and requests to purchase.'"  The district court concluded that this single allegation was insufficient to plausibly allege any of the three elements.  We need only find that Kendell's AC failed to plead any one of the elements of tortious interference to affirm the district court's order dismissing Kendell's AC for failure to state a claim for relief.

We address only the knowledge element of tortious interference.  Kendell contends that three allegations in the AC -- described above and found in paragraphs 23, 24, and 25 -- establish Mark Foods' knowledge about the agreement between Kendell and CSB.  Mark Foods responds that these allegations are

conclusory because they fail to allege any specific facts about "how" Mark Foods knew of the alleged agreement and that to the extent these allegations are factual, they only imply that Mark Foods was aware of dealings between Kendell and CSB prior to 2021, which is insufficient.

We find that Kendell failed to allege knowledge in its AC. The only allegations in the AC bearing on Mark Foods' knowledge are that "[b]etween 2012 and 2020, Mark Foods attempted to procure CSB's annual catch by . . . send[ing] [CSB] proposed purchase prices and requests to purchase." These allegations, read together, do not give rise to a reasonable inference that Mark Foods knew about the alleged agreement between Kendell and CSB. At most, they imply that Mark Foods knew it had lost out on CSB's catch to one or more unknown competitors in past years and hoped to fare better in competing for that catch -- with whomever else sought it -- going forward.[4] Therefore, Kendell did not plead

---

[4] In finding that there was no knowledge of an existing agreement, we -- like the district court -- do not credit the allegation that Mark Foods was "fully aware" of Kendell's agreement with Mark Foods, as this allegation provides no facts or details showing that Mark Foods had knowledge of Kendell and CSB's agreement for the 2021 catch. We -- like the district court -- also do not credit the allegation that CSB "intentionally and improperly interfered with the [a]greement" and did so "knowingly and with the intent to interfere" because the allegation is conclusory.

sufficient factual allegations to plausibly establish the knowledge element of tortious interference.

**III.**

For these reasons, the district court's order granting the motion to dismiss is **<u>affirmed</u>**.